[Crim. No. 2475.   First Dist., Div. One.   May 15, 1947.]

In re DAVE PLUMMER, on Habeas Corpus.

Joseph I. McNamara for Petitioner.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

WARD, J.—This is a petition for a writ of habeas corpus on the ground that there was no competent evidence submitted to the committing magistrate sufficient to constitute cause to hold petitioner to answer (Pen. Code, §§ 871, 872) for trial in the superior court on a charge of murder.

The petitioner herein did not testify at the preliminary hearing. The record discloses that the evidence adduced was (a) a statement made to a police inspector by a codefendant out of petitioner's presence, (b) petitioner's statement to the inspector that he was not guilty of murder, (c) petitioner's statement that he had been advised by his attorney not to answer any questions propounded by the police, and (d) the fact that petitioner and his codefendant lived together in a certain San Francisco hotel and both checked out of the hotel after the murder was committed.

The evidence of the autopsy surgeon showed that one George F. Erickson had received many lacerations and contusions on the face and head resulting in a swelling of the brain, followed by hemorrhages. Technically the cause of death was given as "concussion of the brain with multiple petechial hemorrhages of the brain system; in other words, death was due to hemorrhages which were secondary to physical violence." In brief, blows received by Erickson, according to the autopsy surgeon, caused his death on or about February 21, 1943.

The testimony of one of the investigating inspectors in the matter of Erickson's death revealed that when Erickson was found by the police in one of the city "squares" there was missing a wrist watch. The watch was located on January 26, 1947, shortly after it had been pawned in 1947. The recovery of the watch was followed by the apprehension of David Plummer, the petitioner herein, and Alfred A. Fox. The police authorities interviewed Fox who stated in substance that he and Plummer, about midnight on the date subsequently alleged in the complaint, had taken a cable car ride to the top of one of San Francisco's hills. Fox stated that Erickson approached them, asked for a match and made some gestures that indicated that Erickson was on the queer

side. The police inspector testified that Fox "stated that the fight between he and the deceased was quite severe and that he was so busy he did not know as to what action or part of the fight Plummer had participated in. He stated that the following day his hand was quite swollen from striking the deceased. When they left the deceased was against the tree on the north pathway that runs east and west to Washington street. He stated that when he left the scene of the crime both he and Plummer ran out of the square on Gough street and he had with him the deceased's watch and that he had pawned that watch in San Pedro." After the murder Fox left San Francisco and "went to sea," whereas Plummer traveled to the State of Washington.

The police inspector testified: "I spoke to the defendant Plummer after he was brought back from Port Orchard, Washington, and he refused to either affirm or deny any participation in the crime, stating that it was upon advice of counsel that he did not wish to make any statement. He further stated that he had been living with Fox in the Padre Hotel here in San Francisco and he also refused to deny the fact that he was up in Lafayette Square on the night that this crime was committed, stating it was upon advice of counsel he was refusing to do so." On cross-examination by Plummer's counsel, the inspector, referring to Plummer, testified further: "He stated to me that he was not guilty of the murder."

The committing magistrate concluded that petitioner "should explain his part of it." Although the committing magistrate was entitled to consider petitioner's failure during the preliminary hearing to explain or deny by his testimony any evidence of facts in the case against him (Cal. Const., art. I, § 13), the question remains whether such failure to testify constitutes reasonable or probable cause to hold petitioner to answer for trial in the superior court for murder.

This question may be resolved by a consideration of two sections of the Penal Code. Section 688 provides that "no person can be compelled, in a criminal action, to be a witness against himself." (Cal. Const., art. I, § 13.) Section 858 provides that "When the defendant is brought before the magistrate upon an arrest, either with or without warrant, on a charge of having committed a public offense, the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the pro-

ceedings.'' The committing magistrate knew that petitioner had been advised by counsel not to make any statement. Petitioner's duty to ''explain his part of it'' is to be determined subject to the statutory rule that an attorney has the right to advise his client not to answer questions that may be asked him. An attorney may well conclude that silence will best serve an accused on the main accusation and on the many minor details upon which he may be interrogated and inadvertently give inconsistent answers. Unless the rule under our present procedure that an attorney's advice must be recognized and honored is continued, then the provision of Penal Code, section 858, that an accused is entitled to the advice of counsel in every stage of the proceeding would be a farcial administration of criminal law.

Furthermore, in *People* v. *Simmons,* 28 Cal.2d 699, 715 [172 P.2d 18], it is recognized that ''advice of counsel, admonition as to silence, warning against self-incrimination, a belief that the accused will serve his best interest by silence'' are circumstances to be considered in determining whether ''a reply is called for and the defendant is free to speak spontaneously.''

The next question is whether the statement made by Fox, the co-accused, to the police inspector is evidence sufficient to rule that there was reasonable and probable cause for an order holding petitioner to answer for a trial in the superior court. As said in *People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344] : ''It must be remembered that the evidence before a committing magistrate at a preliminary examination need not be such as would require a conviction. Section 872 of the Penal Code provides that the defendant must be held to answer if 'it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof.' Section 1487 (7) of the Penal Code provides that a party is entitled to discharge upon habeas corpus proceedings where he has 'been committed on a criminal charge without reasonable or probable cause'; 'sufficient cause,' therefore, means no more than that. (*People* v. *Putnam,* 20 Cal.2d 885 [129 P.2d 367] ; *Cleugh* v. *Strakosch* (C.C.A. 9), 109 F.2d 330; *In re Martinez,* 36 Cal. App.2d 687 [98 P.2d 528].) 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused.'' (See opinion

of Marshall, C. J., sitting as committing magistrate, *United States* v. *Burr,* No. 14,692a, 25 Fed.Cas. 3, 12.) The foregoing question must be answered in the affirmative.

Petitioner argues that such evidence is hearsay. He urges that a commitment based thereon is unauthorized, citing *In re Martinez,* 36 Cal.App.2d 687 [98 P.2d 528]. To this respondent replies that as the police inspector's testimony was admitted without objection, and as no motion was made to limit its effect to the defendant Fox, it is to be considered and given its natural probative effect as if it were in law admissible.

It is generally recognized that "a rule of Evidence not invoked is *waived.*" (1 Wigmore, Evidence, 321; accord, 2 Cal.Jur. § 84, p. 267.) ▮ Where the inadmissibility of evidence is not discoverable in the question but appears in the answer, a motion to strike out the answer should be made. (*People* v. *Scalamiero,* 143 Cal. 343 [76 P. 1098].) Had Plummer been convicted of murder he could not question the sufficiency of hearsay statements admitted without objection to sustain his conviction. (*Powers* v. *Board of Public Works,* 216 Cal. 546 [15 P.2d 156]; *Mercantile Trust Co.* v. *Sunset etc. Co.,* 176 Cal. 461 [168 P. 1037]; *Weiss* v. *Bank of America,* 57 Cal.App.2d 892 [135 P.2d 584].) ▮ It follows that he cannot now object that the statement made by Fox to the police inspector is incompetent to establish that there is sufficient cause for an order holding him to answer. As said in Fricke, California Criminal Procedure, 74: "The admissibility of evidence is governed by the same rules as those governing admissibility at the trial and proper objections should be made since, should occasion arise thereafter to test the sufficiency of the evidence to sustain an order holding the defendant to answer, evidence received without objection will be considered even though, had objection been made, the evidence should have been excluded by the magistrate." Respondent successfully distinguishes *In re Martinez, supra,* by pointing out that there timely objection was made to the admission of the hearsay evidence, such objection was sustained, and the testimony was limited to defendants other than Martinez.

Petitioner argues that it was understood by all parties during the preliminary examination that the evidence in controversy was hearsay to be disregarded by the court. If there was such an understanding it does not appear in the record. On the contrary, the record supports the conclusion

that Plummer waived the right to object to the hearsay statements of Fox, since his counsel cross-examined the police inspector as follows: "Q. I believe you said that Fox told you when you interrogated him that he was so busy . . . that he doesn't recall what Plummer was doing? A. That is correct. Q. In other words, he didn't implicate Plummer in the actual fight at all, merely said he didn't know what he was doing? A. He stated that he didn't know whether or not Plummer had struck the deceased."

The effect of cross-examining one under whose examination hearsay statements were offered is considered in *People* v. *Beltowski,* 71 Cal.App.2d 18, 24 [162 P.2d 59]: "It is claimed that the admission in evidence of Castropil's statement was prejudicial error. The statement incriminated both the appellant and Swanson. It showed that Beltowski had the pistol and that Swanson took the money out of the cash register while Castropil stood in front of Lazootin 'so they wouldn't see the man was being held up from the street.' This, of course, was damaging to the appellant. Counsel who represented all three defendants objected to the introduction of the statement *as to Swanson* but not as to this appellant. When it was being offered the defense started to make a *general* objection, whereupon the prosecution interrupted with the suggestion that the defense had the right to cross-examine the inspector (under whose examination it was being identified and offered). Counsel adopted this suggestion and carried on a rather extensive preliminary cross-examination as to the circumstances under which the statement was obtained from Castropil. It was after this that the statement was read and introduced, and it went into evidence without any objection on behalf of the appellant. The corpus delicti had been proved at the very outset of the trial. As already stated, the appellant had not signed the statement, nor acceded to anything it contained, and he flatly denied participation in the robbery. Nevertheless, there was no objection and we see no error in its admission."

Not only did petitioner waive any objection to the hearsay evidence by cross-examination of the police inspector giving it, but after the introduction of the evidence no motion to strike it from the record, nor any reference to its being objectionable, was made. Petitioner's counsel merely said: "There is definitely nothing to hold Plummer in here."

Petitioner argues that the district attorney conceded that the statement made by Fox to the police inspector was in-

competent. He relies upon the district attorney's statement which was made four days after the evidence was admitted. It reads: ''I might say, Your Honor, that there is no evidence in this record, other than the statement of one of the defendants, that Plummer, the defendant, was present. There is no evidence that he did anything at any time and I feel that it would be against the interest of justice to hold him. I don't think he would ever get to trial and I feel certain he would never be convicted.'' The gist of the district attorney's remarks is: ''I feel certain he would never be convicted.'' If this opinion still prevails, it is an easy matter, not by means of habeas corpus, but by a direct motion, to urge a dismissal to the trial judge.

Petitioner urges that although an objection should be sufficiently specific, if the *objection* is such that all parties understood the objection ''it will not be said that the objection failed of its purpose.'' (*People* v. *Boggess,* 194 Cal. 212, 232 [228 P. 448].) Petitioner relies upon *People* v. *Bob,* 29 Cal.2d 321 [175 P.2d 12] and *People* v. *Darby,* 64 Cal.App.2d 25 [148 P.2d 28]. The difference between those cases and the present one is that there objections were made from which it might be construed that the objection referred to hearsay testimony. In this case after the presentation of the evidence no motion to strike Fox's statement from the record, nor any reference to its being objectionable, was made; furthermore, on resumption of the hearing four days later, petitioner still made no objection to the character of the testimony.

After the district attorney made the statement before set forth, defendant's attorney stated: ''In view of that, Your Honor, in view of the statement of the Assistant District Attorney, I will make a motion to dismiss as to Plummer.'' This was the first affirmative action of the defendant and is not in any way an objection to the evidence.

Petitioner strongly urges that the committing magistrate did not consider hearsay evidence. In this matter we are bound by the record on file. That it was apparent that the court was considering the hearsay testimony is shown by the court's statement made thereafter: ''They were in this together, whatever it was, they were together.'' The only basis for this statement was the hearsay evidence. The defendant was then and there put on notice that no matter what the district attorney had said, the hearsay evidence was being applied

against him. He should have moved to strike it from the record, and, failing to do so, he cannot prevail in his claim that the evidence was incompetent.

■ Just as the ruling of a trial court, excluding testimony, will be sustained if its introduction was improper, although counsel do not state the correct grounds of objection, provided the correct grounds could not have been obviated (*Spottiswood* v. *Weir*, 80 Cal. 448 [22 P. 289]; *Miller* v. *Van Tassel*, 24 Cal. 458, 459), so here the committing magistrate's conclusion that there is sufficient cause to believe the defendant guilty may be sustained although the reason assigned, namely, that Plummer "should explain his part of it," is erroneous (*People* v. *Simmons*, 28 Cal.2d 699 [172 P.2d 18]) since the unobjected to hearsay evidence shows sufficient cause.

The writ heretofore issued is discharged.

Peters, P. J., and Bray, J., concurred.