[Civ. No. 7421. Third Dist. Aug. 1, 1947.]

DONG HAW, Petitioner, v. SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent.

Wallace Shepard and Thos. O'Hara for Petitioner.

John Quincy Brown, District Attorney, and Albert H. Mundt, Assistant District Attorney, for Respondent.

PEEK, J.—Petitioner, together with his daughter Rose and son James, both adults, were jointly charged in the first count of an indictment returned by the grand jury of Sacramento County, with the crime of conspiracy to bribe an executive officer of the State of California, Bartley W. Cavanaugh, City Manager of the city of Sacramento, and in the second count said parties were further charged with the crime of offering a bribe to said officer.

Count one of the indictment sets forth five overt acts alleged to have been committed in pursuance of said conspiracy: (1) the delivery by James Dong to the Cavanaugh home of 12 bottles of assorted liquors together with a letter addressed to Cavanaugh and signed "Dong Haw" in which was $3,000 in currency; (2) the writing by Rose Chang of the letter which accompanied the money; (3) the supplying by petitioner to James Dong of the liquor and the money to

be so delivered; (4) the directions and authorization given by petitioner to Rose Chang to write the letter, and (5) the attempt by Rose Chang to arrange an interview between the city manager and her father, Dong Haw.

At the time of petitioner's arraignment in the superior court he moved to quash the indictment, which motion was denied, and upon his plea of not guilty the matter was set for trial. Thereafter he filed his petition for a writ of prohibition in this court to restrain the respondent superior court from further proceeding in said matter.

From our examination of the transcript of the proceedings before the grand jury it would appear that petitioner's contention that said transcript fails to disclose any legal evidence to support the indictment is well founded, and the writ as prayed for should issue.

The portions of the evidence introduced which respondent contends support the indictment against the petitioner may be summarized as follows:

Dong Haw is the owner of certain real property situated in the city of Sacramento, on which is located a grocery store, a liquor store, a restaurant and cocktail lounge, and what is referred to throughout the proceedings as the Chinese Social Club. He is associated in the grocery business with undisclosed persons and is one of three licensees in an off-sale liquor license, one of the others being his son James. James was identified as the person who delivered a case of assorted liquors and a letter containing money to the home of the city manager. The letter mentions that since the new chief of the Sacramento Police Department took office the Chinese clubrooms have been closed, thereby throwing out of work many elderly Chinese who had no other means of support. Furthermore, it was asserted that such action meant a great deal to the business of Chinatown and it would be a favor if the city manager would consult with the chief of police and permit a reopening. The letter ended with a statement that the money was a gift for the city manager's vacation, and that a similar gift would be made at Christmas time. The name signed to the letter was "Dong Haw." Attached to the money was a business card of petitioner on which, in addition to his own name, appeared the words "Yick Chong & Co." and "Hong King Lum" and the respective addresses. At the time James called at the Cavanaugh residence he stated that the note was from his father who desired to speak to Mr.

Cavanaugh. The following day Mr. Cavanaugh, while at the office of the district attorney, received a call from his office asking him to call petitioner at a specified number. Upon calling the number given he was informed by an unidentified woman, who he believed to be Chinese, that her father wished to talk with him. In a later call at the request of the district attorney, Cavanaugh suggested that Dong Haw call at his office, and was informed by a woman that her father was out of the city. Further efforts by the city manager to contact petitioner were unsuccessful. In an extrajudicial statement made by Rose to the chief deputy district attorney and chief of police she admitted calling Mr. Cavanaugh. She denied writing the letter to Cavanaugh but expert witnesses testified that the handwriting was hers. The chief of police also identified certain specimens of her handwriting as having been written in his presence.

The delivery truck used by James was registered in the name of Yick Chong and Dong Haw. The revenue stamps on the liquor bottles bore serial numbers in sequence to the numbers on similar bottles of liquor examined at the liquor store. On the carton in which the liquor was packed the words "Yick Chong Co." were written in pen and ink. At Rose's home police officers found a letter dated August 11, 1945, addressed to a national magazine on which the name of Dong Haw again appeared and which had been written by Rose. A card room license had been issued some time previously by the city of Sacramento to the Chinese Social Club to operate in a portion, of the premises owned by petitioner, Police officers examined the club room and found various kinds of gambling paraphernalia including lottery tickets showing drawings were held between March 3 and March 17, 1947, and a written receipt reciting that on December 11, 1946, Dong Haw had paid to the Capital Filipino Press $70 as a donation for a Filipino celebration. Also introduced were lottery payoff schedules bearing the address 910 Third Street, Sacramento, an address unrelated in any way to petitioner so far as the record here shows. There was no testimony which referred to actual gambling at the Chinese Social Club other than that several years previously the premises had been used for gambling.

In support of the contention that the evidence so summarized is sufficient to sustain the indictment against petitioner within the rule stated in *Greenberg* v. *Superior Court*, 19 Cal.2d 319 [121 P.2d 713], that "if there is some evidence to

support the indictment, the courts will not inquire into its sufficiency,'' respondent argues that not only is there *"some evidence* to sustain the indictment but ample evidence so to do.'' Specifically it is stated (1) that the writing on the carton in which the liquor was delivered and the similarity of serial numbers of the revenue stamps on the bottles ''is certainly *some evidence* that the whiskey was supplied by Dong Haw,'' and that it ''came from the Dong Haw establishment''; (2) that the letter written by Rose to a national magazine ''is *some evidence* that Rose Chang had authority to and did sign correspondence for her father''; (3) that the truck was registered in the name of Yick Chong and Dong Haw ''is *some evidence* to connect Dong Haw with the commission of the crimes''; (4) that even though Dong Haw had no interest in the Chinese Social Club he did have a financial interest therein since ''it must be inferred that he received compensation for the use of those premises in the form of rent''; (5) that as both Rose and James were ''irrefutably linked with the conspiracy'' it also must be inferred that Rose and James ''were acting through and for'' their father who did have ''at least some financial interest in the gambling activity'' and therefore such ''facts and circumstances are *some* facts and *some* evidence to connect Dong Haw with the offenses charged''; (6) that the business card of Dong Haw which was attached to the money ''certainly . . . is *some evidence* to connect the father Dong Haw with the crimes charged''; (7) that the fact that Dong Haw is the father of Rose and James, considered with the other evidence, tends in a degree to ''connect Dong Haw with the commission of the crimes charged against him'' and ''is *some* evidence.'' ''Particularly where the crime of conspiracy is charged''; and (8) lastly, that the only reasonable inference to be drawn from the exhibits of paraphernalia taken from the club, pictures taken of its interior and the fact that it was closed is that the premises were actively used for illegal gambling.

The fact that the liquor was delivered in a carton on which was written the name of the store and that petitioner was coowner of the truck used by James, is not competent to establish the act of conspiracy or offer to bribe. Likewise, the similarity of the serial numbers on the revenue stamps is no more competent to connect Dong Haw with the crime charged than any of the other licensees, which fact, by the record is shown to be inconclusive at best. The letter written

by Rose in 1945, to which she signed her father's name is wholly incompetent to show any authorization to write the bribe letter here in issue or connect petitioner with the conspiracy. It is an isolated circumstance, completely unconnected with the charges herein. Petitioner's ownership of the premises where the Chinese Social Club is located is wholly immaterial, for nowhere in the record is there any showing of either an actual or circumstantial connection between petitioner and the club. Even if it be further assumed, as respondent contends, that the club was closed by police order and therefore it presently was being used for illegal gambling, nevertheless such evidence, whether true or false, would be totally incompetent as against petitioner to support the crimes charged. Nor, as the prosecution argues, does the inference, based upon an inference that as landlord, petitioner must be assumed to have a financial interest in the rental, which amounts to *some evidence* that he therefore had a connection with the club, which in turn must be taken as an implied authorization to his children to link him with the conspiracy.

However figuratively true it may be that the sins of a father may be visited upon his children, we know of no rule of law that solely because of the circumstances of parentage, the acts of one's children may be visited upon a father, without some competent evidence to connect him therewith. "Conspiracies cannot be established by suspicions. There must be some evidence. Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense." (*People* v. *Long,* 7 Cal.App. 27, 33 [93 P. 387].) See, also, *People* v. *Zoffel,* 35 Cal.App.2d 215 [95 P.2d 160]; *People* v. *Collier,* 111 Cal. App. 215 [295 P. 898].

While the courts will not inquire into its sufficiency if there is some evidence to support the indictment, nevertheless "the lack of any evidence conclusively establishes that the grand jury has exceeded its authority in returning the indictment." (*Greenberg* v. *Superior Court, supra,* at page 322.)

By the use of the phrase "some evidence" the Supreme Court could not have meant "any evidence," whether incompetent, irrelevant or otherwise. We take it to mean valid evidence, not evidence of no probative value but evidence such as that referred to in section 921 of the Penal Code which, if unexplained or uncontradicted would in the

minds of the members of the grand jury warrant a conviction by a trial jury.

▮ While the Supreme Court in the Greenberg case did not explain whether it thought the same rule should apply in the case of an indictment as in the case of an information it at least indicated no severer rule should apply. (*Davis* v. *Superior Court,* 78 Cal.App.2d 25, 28 [177 P.2d 314].) Certainly then, to apply a comparable rule would not be to apply a severer rule.

Therefore, since an information which is based entirely on hearsay or incompetent evidence is unauthorized (*In re Martinez,* 36 Cal.App.2d 687 [98 P.2d 528]; see, also, 7 Cal. Jur. § 120, p. 984), and since there is no reason why any greater solemnity should attach to an indictment obtained under the same circumstances it necessarily follows that the indictment herein against Dong Haw was unauthorized and in excess of the jurisdiction of the grand jury.

▮ While one may waive a rule of evidence by failure to invoke timely objection and while improper evidence thus introduced may be considered and given whatever probative value it may have as if it in law were admissible (*In re Plummer,* 79 Cal.App.2d 651, 655 [180 P.2d 771], and cases therein cited), it would seem to pervert that rule if our courts were to hold that in the case of a void indictment an accused, who had no opportunity to either object or to move to strike the incompetent evidence, should thereby come within the rule enunciated and be foreclosed forever from attacking the indictment. Apropos of this situation the words of the Supreme Court in the case of *Greenberg* v. *Superior Court, supra,* at page 323, are particularly pertinent:

"Petitioner cannot appeal either from the order denying his motion to quash the indictment or from the overruling of his demurrer. He could not be required to stand trial and to appeal from a possible adverse judgment without being subjected to unreasonable expense, inconvenience, and delay. (*Bruner* v. *Superior Court,* 92 Cal. 239 [28 P. 341]; *Terrill* v. *Superior Court,* 6 Cal.Unrep. 398 [60 P. 38]; *Evans* v. *Willis,* 22 Okla. 310 [97 P. 1047, 18 Ann.Cas. 258, 19 L.R.A. (NS) 1050]; see *Farraher* v. *Superior Court,* 45 Cal.App. 4 [187 P. 72].) The only adequate remedy he may seek, therefore, is a writ of prohibition (*Ibid.*). Regardless of the fact that the grand jury is a judicial tribunal from whose decisions there is no appeal (*In re Kennedy, supra*), defendant

has the statutory right to restrain the court by prohibition from proceeding in excess of its jurisdiction to try an offense based on a void indictment.''

Lastly, the grand jury, at the conclusion of the hearing, was informed by the district attorney that insofar as anyone in his office was concerned there was no doubt but that petitioner had violated the statute. After further stating that he did not feel he should attempt to influence the jury concerning the evidence, he nevertheless proceeded to give the jury what he termed a ''thumbnail sketch'' of the evidence in which he reviewed all of the evidence herein mentioned as that upon which respondent relies in support of the indictment. The jury, composed of laymen, thus were directly told, by the one to whom they naturally looked for legal guidance, that the evidence introduced was legally sufficient to support an indictment, whereas in fact no relevant or competent evidence had been introduced against petitioner. In other words, the prosecution, through the agency of what may be likened to an ex parte proceeding, obtained an indictment upon evidence which, if introduced at a preliminary proceeding, would not be sufficient to hold a defendant to answer (*People v. Martinez, supra*), and thereby accomplished indirectly that which it would have been precluded from doing directly in a preliminary hearing where a defendant would have the right to appear with counsel and object to that which he believed to be improper.

The action of the grand jury in thus returning an indictment against petitioner Dong Haw at the request or suggestion of the district attorney makes applicable the observation of the Supreme Court in the Greenberg case, that a grand jury ''is no Star Chamber tribunal empowered to return arbitrary indictments unsupported by any evidence.''

Petitioner, therefore, is entitled to a writ of prohibition restraining the superior court from proceeding with the trial against him. Let the writ issue.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied August 23, 1947, and respondent's petition for a hearing by the Supreme Court was denied September 29, 1947. Shenk, J., and Spence, J., voted for a hearing.