ONG WAY JONG, alias Johnny Ong, and Wee Zee Yep, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15178.

United States Court of Appeals Ninth Circuit.

March 30, 1957.

guilty to Count 2 and not guilty to Counts 1 and 3. Upon waiver, the trial was by the judge without a jury. After the government rested its case in chief, Ong moved for acquittal. The motion was denied. Wee did not testify. Ong gave testimony in his defense. Motion for acquittal and new trial by Ong after the evidence was also denied.

The trial judge found both defendants guilty, Wee on all counts and Ong on the conspiracy count alone. Only Ong is before this Court on appeal.

The evidence showed Wee had sold two ounces of heroin to a government agent on January 23, 1956. It is conceded that Ong had no connection whatsoever with this narcotic sale and possession.

The evidence also showed that Wee is a narcotic peddler who has been selling heroin about San Francisco for about four years. A Mr. Wu, undercover agent for the government, negotiated with Wee for the purchase of heroin. Wee claimed to have many sources of the drug. There was a purchase on January 23 which the government concedes did not emanate from Ong. Wee claimed he had another source, whom he described as an unemployed ex-bookie, who was going to buy a new Cadillac, who had no telephone, and who used to work in a cannery. Wee did not name Ong, but the description which was given fitted in all respects. During the period of surveillance about to be described, it is apparent Wee associated with no one else.

On February 1, Wu discussed with Wee, in the apartment of the former, another purchase of narcotics. Wee said he would contact his friend and get it. Agents followed Wee to the residence of Ong and from there to a street intersection to which Ong drove in a 1951 Cadillac. Wee got out of his own car and into that of Ong. The two talked for a short time. Thereafter Wee drove to the apartment of Wu, where he informed the latter that the price offered was too low. Wu agreed to pay $600.00 per ounce. A further meeting of Wee and Wu was agreed

Herron & Winn, Fred R. Winn, San Francisco, Cal., for appellants.

Lloyd H. Burke, U. S. Atty., Richard H. Foster, Donald B. Constine, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before STEPHENS, HEALY and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Ong Way Jong and Wee Zee Yep were indicted on three counts for violation of the narcotics laws. The first count charged Wee with selling heroin. The second count charged Wee with concealing this heroin. The third count charged Ong and Wee with conspiring to sell, conceal and transport narcotic drugs. Ong pleaded not guilty. Wee pleaded

upon at 8:00 p.m. in a restaurant. At 7:30 p.m., Wee and Ong were in the Cadillac of the latter. After a short conversation, Wee went to the restaurant where he met Wu, whom he told that he was still negotiating for delivery and that he was sure he could make it later in the evening. Thereafter, Wee was followed to an intersection where he met Ong. After a short talk, Ong left and was gone for about an hour. Wee was in view of the agents at all times during this period. At 9:30 p.m., Wee telephoned Wu that the narcotic delivery would be made in about an hour and that Wee was waiting for his "connection" to return with the heroin.

At 10:00 p.m., the agents saw Ong return to the same intersection in his 1951 Cadillac. Wee joined him in an entranceway. Ong was carrying a small child in his arms. After a very short meeting, Wee left Ong and went directly to the apartment of Wu, where he delivered heroin in return for $600.00. Wee was then followed back to the same intersection, where he met Ong.

On February 7, 8, 13 and 17, negotiations were conducted for another sale of heroin. Wee called Wu and said he had placed an order. Wee said his "connection" was playing Mah Jong. On that day, the seventh, agents observed Wee and Ong leaving a Mah Jong parlor in Chinatown. The next day Wee telephoned he was with his "connection" and attempting to obtain narcotics. An agent saw Wee go to Ong's house on February 8, where the two defendants drove off in a new 1955 Cadillac. But Wee called Wu later in the evening and said he could not make delivery at the time. On February 13, Wee, in answer to complaints of Wu, said he would try to

see the "man" and get the narcotics. Wu overheard a conversation over the telephone with someone called "Johnny" by Wee and later Wee said he could not deliver that night.

On February 17, Wee told Wu that payment must be made in advance. Wee offered a 1955 Cadillac owned by his "connection" as collateral. Wu said he must have the narcotics before he paid the money. On February 21, Wee produced a pound of narcotics. But the government specifically admitted that this was not supplied by Ong.

However, all this does not prove Ong was dealing in narcotics. Of course, there is a strong suspicion that he was. But there is no proof. Unquestionably, someone supplied the illicit heroin which Wu purchased. Wee was without doubt guilty. But, before one can be proven to be a conspirator and so bound by the admissions of a coconspirator such as Wee, there must be some evidence produced of a conspiracy and of his connection with the crime.[1] No evidence has been adduced which definitely proves that Ong was here engaged in any criminal activity. No one has directly testified to such a connection or any circumstances from which such an accessoryship could be legally inferred. Guilt by association would be the only basis.[2] Ong was constantly with with Wee. Wee sold narcotics. Therefore, Ong must have supplied the heroin. This is a classic non sequitur. For it must be remembered that the declarations of Wee to Wu were hearsay as to Ong. He was not present. If proof aliunde had established a conspiracy, Ong might be bound by the conversation of Wee.[3] If then any connection between

1. "Before the declarations of coconspirators can be received in evidence against one charged with participating in the conspiracy, it must be shown by independent evidence that the conspiracy existed and that the accused was a party to it at the time the declarations were made." Nibbelink v. United States, 6 Cir., 66 F. 2d 178, 179. Mayola v. United States, 9 Cir., 71 F.2d 65.

2. To infer guilt from mere association does not meet the test set in Marino v. United States, 9 Cir., 91 F.2d 691, 694, 113 A.L.R. 975, certiorari denied Gullo v. U. S., 302 U.S. 764, 58 S.Ct. 410, 82 L. Ed. 593, to-wit: Conspiracy "is a partnership in criminal purposes. The gist of the crime is the confederation or combination of minds."

3. Bartlett v. United States, 10 Cir., 106 F.2d 920.

Ong and the substantive offense had been established, Ong would also have been bound by the declarations of Wee.[4] But no such proof was present.

The evidence outlined above would not raise any suspicion in and of itself that Ong was dealing in narcotics. It might raise a suspicion that Wee was gambling away the proceeds of his illicit traffic. Ong was a gambler and stated that was the way he supported himself and had money to buy Cadillacs, he being otherwise unemployed. Of this there was no contradiction. It is conclusively shown that Wee had many sources of supply. It is firmly established in the evidence that on the sale by Wee of narcotics on January 23, 1956, Ong was not the supplier or "connection" of Wee. More striking still is the fact that on the sale of narcotics by Wee on February 21, 1956, Ong was not the supplier or "connection" of Wee. If there is anything which is proved by circumstantial evidence, it would seem to be that Ong was not the supplier of narcotics for the sale made by Wee on February 1, 1956. Indeed, it is perfectly obvious that the agents did not believe they had a sufficient case against Ong on the sale on February 1. They continued surveillance of Ong and Wee from February 7 to February 21, in the attempt to gain some tangible evidence against Ong. This surveillance ended when the final sale was made by Wee on February 21, from what the government agents admitted was a source other than Ong. Notwithstanding this overwhelming fact that the very intimate dealings between Ong and Wee continued during this later period and were closely observed by the officers, Ong was arrested February 21, not for the sale on that day, but for the sale on February 1.

■ This was all the competent evidence produced by the government against Ong. As is apparent, there is not a scintilla of evidence that Ong was guilty of conspiring to sell narcotics. He is not shown to have touched, possessed, sold or conspired to sell narcotics. The overt acts alleged in the indictment are entirely innocuous. Ong is not shown to have received, used, passed or touched any money used in the transaction of February 1. No marked bills were used. Ong owned Cadillac cars, but there is no suggestion in the record that he used them to transport narcotics. Furthermore, Ong was not seen at or around the place of delivery of the narcotics. He was never found with any indicia of possible trading in narcotics or any evidence of conspiracy in his possession. The motion for acquittal must have been granted. In fact, it was denied.

■ The excellent trial judge made the mistake of considering a mass of evidence which was only admissible against Wee. It is an unquestioned rule of law that there must be substantial evidence of a conspiracy before the acts and declarations of a supposed conspirator become admissible against any other defendant if these are not done or said in his presence.[5] This is because such acts are transactions between third parties, with which the other defendant has

4. Such evidence would be probative of the proposition that Ong was connected with the conspiracy, which is a condition precedent to the admission of Wee's statements. Pope v. United States, 3 Cir., 289 F. 312, certiorari denied 263 U.S. 703, 44 S.Ct. 33, 68 L.Ed. 515.

5. See the language of Justice Jackson, concurring in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790: "Strictly, the prosecution should first establish prima facie the conspiracy and identify the conspirators, after which evidence of acts and declarations of each in the course of its execution are admissible against all. But the order of proof of so sprawling a charge is difficult for a judge to control. As a practical matter, the accused often is confronted with a hodgepodge of acts and statements by others which he may never have authorized or intended or even known about, but which help to persuade the jury of existence of the conspiracy itself. *In other words, a conspiracy often is proved by evidence that is admissible only upon assumption that conspiracy existed."* (Emphasis supplied.) In accord, to the proposition that hearsay statements such as those of Wee are inadmissible unless the particular conspiracy is shown to exist, or, if so, not to have ter-

not shown by other evidence to have a connection.[6] These matters are hearsay as to him.

■ The danger of another rule is highlighted in this case. Wee never named Ong as a source of narcotics. But his description could fit no other person. Wee said the connection had no telephone, was an ex-bookie, was purchasing a new Cadillac, and used to work in a cannery. This was all found to be true about Ong. But the declarations of Wee were not binding upon or admissible against Ong.

The agents followed Wee during all of the negotiations relating to the sale of February 1. They saw Wee meet no one but Ong when Wee brought the narcotics back for sale. They saw Wee go to meet Ong immediately after he got the money for the sale. In each instance during the negotiations of the sale of February 1, when Wee said he was going to meet his "connection," he met Ong. All this sounds quite convincing, and undoubtedly the agents themselves were convinced and convinced the learned trial judge that Ong was guilty.

But the destructive facts are that, between February 2 and February 22, the same course of conduct was continued between the government agents and Wee with Ong. Wee negotiated with the agents, told them he was going to meet his "connection" and was seen by the agents to meet Ong immediately. Wee would then report to the agents that he could not make delivery. Wee offered to put up the Cadillac car of his "connection" as guaranty of good faith. If the agents had accepted this offer, they might have had a case. But, at the end of all this negotiation and the intimate meetings and association with Ong by Wee during this later period, Wee actually received the narcotics from another person, and the government admits this. It might well be that they also failed to see the delivery by some other person to Wee on February 1. It is conceivable that Wee was using his association with Ong as a blind to hide his real "connections."

■ In any event, there must be prima facie proof of a conspiracy before the acts and declarations of an alleged conspirator during the supposed execution thereof become binding upon a third party who is not shown otherwise to have conspired. The acts of Ong are not sufficient to show he had any connection with the delivery of the narcotics by Wee. Unless the acts and declarations of Wee outside of the presence of Ong are admissible, the evidence would have been insufficient to warrant putting Ong on his defense.[7] It is true there was evidence that Ong kept silence in face of incriminating statements and charges made in his presence. But, admittedly, he was under arrest at the time. Silence under these circumstances does not constitute an admission.[8]

■ It is then argued that, since the trial judge had the responsibility of deciding on the facts, he must be deemed to have excluded incompetent evidence. But this rule is of no avail in the event a motion for acquittal is made at the close of the case for the prosecution. At such a point the incompetence

minated, see Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196; Minner v. United States, 10 Cir., 57 F.2d 506.

6. Montford v. United States, 5 Cir., 200 F.2d 759.

7. There is testimony that, when Ong was arrested on February 22, his wife said, "I told you you would get yourself into trouble by fooling around with Rocky [the defendant Wee]." It is not otherwise shown that Mrs. Ong had knowledge other than that her husband kept company with what cannot be said to be the best of company. Such keeping of

company will not support a conspiracy charge. See Dong Haw v. Superior Court, 81 Cal.App.2d 153, 158, 183 P.2d 724, where the court said: "Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense."

Similarly, that Ong purchased a 1955 Cadillac on February 6, partly for cash, does not require solely the inference that payment was made from the proceeds of narcotics transactions. See Mazurosky v. United States, 9 Cir., 100 F.2d 958.

8. A substantial number of states avoid the danger that the trier of fact may give

and sufficiency of the evidence is raised as a matter of law. We hold no sufficient evidence was presented by the government to hold the defendant or to place him on his defense.

Since the motion for acquittal was overruled erroneously, the cause must be reversed. However, some other contentions will be noticed. Ong testified in his own defense. It is said the trial court did not believe him. It is clear some of his testimony was contradictory. But he made no admissions of fact which tended to connect him with a conspiracy to sell narcotics. At the close of all the evidence, the prosecution was in no better position than when it rested at the close of its case in chief.

Reversed with direction to grant the motion for acquittal.

independent credit to the statement of another, undenied by defendant, by holding evidence of his silence and, as a result, the statements were inadmissible. McCormick, Evidence (1954) § 247. Such is the federal view. United States v. Lo Biondo, 2 Cir., 135 F.2d 130; McCarthy v. United States, 6 Cir., 25 F.2d 298. See also Yep v. United States, 10 Cir., 83 F.2d 41. Compare Gentili v. United States, 9 Cir., 22 F.2d 67, where it is not clear that the defendant, when silent in face of a damaging statement, was then under arrest.