[Crim. No. 1729. Third Appellate District.—July 17, 1940.]

THE PEOPLE, Respondent, v. HOMER C. WARD, Appellant.

Homer C. Ward, *in pro. per.*, for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendants were jointly charged under section 211 of the Penal Code with robbery committed on February 4, 1940, by feloniously taking from the person and immediate presence of Mae Fashbaugh her Elgin wrist watch, one platinum diamond ring and another gold ring containing a black stone. In a second count of the information the defendants were also charged with burglary. The second count was dismissed. Before the time of trial Parkinson pleaded guilty to the charge of robbery. He was called as a witness in behalf of the prosecution and testified against the appellant. The jury disagreed with respect to the guilt of Williamson, but rendered a verdict finding the appellant, Homer C. Ward, guilty of robbery of the second degree. His motion for a new trial was denied. A judgment of conviction of robbery of the second degree was entered against the appellant and he was sentenced to imprisonment at Folsom for

the time prescribed by law. From that judgment and from the order denying a motion for new trial this appeal was perfected.

It is contended the verdict and judgment against the appellant are not supported by the evidence chiefly for the alleged reason that the testimony of Parkinson, the accomplice, is not adequately corroborated as required by section 1111 of the Penal Code. It is also asserted the court erred in its rulings upon the introduction of evidence in the course of the trial, and in refusing to give to the jury certain instructions which were offered by the appellant. Finally, the district attorney is charged with prejudicial misconduct in his argument to the jury.

The verdict and judgment are adequately supported by the evidence. The record leaves little doubt that the appellant and Parkinson planned to rob Mae Fashbaugh in the exact manner in which the crime was perpetrated. Parkinson and Ward were old friends, associates and ex-convicts. The defendants Ward and Williamson had been rooming together with Mae Fashbaugh, a waitress, at an apartment house in Sacramento for several months. Parkinson roomed with another associate at a hotel in the same city. The appellant and Parkinson had been acquainted for more than eight years. They frequently met at the Bartenders' Union and elsewhere. About 4 o'clock on the morning of the robbery, the appellant and Williamson left their apartment and met Glenn Parkinson at the Bartenders' Union where they drank and conversed together. The evidence did not satisfy the jury that Williamson participated in the plan to perpetrate the robbery, and the jury failed to convict him of the charge. But Williamson corroborated the fact that he and the appellant met Parkinson there at that time, and that Ward and Parkinson then conversed together for about twenty minutes. Parkinson testified that Ward then told him he had a girl in his apartment who had just ''knocked off somebody for a lot of stones'', and advised him to go to the apartment and steal the jewelry. The robbery was then carefully planned between them. Ward handed Parkinson his key to the apartment, and he and Williamson returned to their rooms where they arrived about fifteen minutes ahead of Parkinson. Mae Fashbaugh was then asleep in a bed in appellant's apartment. When Parkinson arrived at about 5 o'clock that morning, he rang the

outside doorbell. Williamson went downstairs and admitted him. Parkinson followed him upstairs into the bedroom where Ward stood awaiting them. Williamson testified that Parkinson had his right hand thrust into his side coat pocket which protruded as though it contained a revolver. The witness claimed to have seen a shiny object in that pocket. Parkinson was not masked. Ward, who had known him intimately for years, could not have failed to recognize him. Parkinson gruffly informed the occupants of the room that he meant business and commanded them to "stick-em-up". They promptly obeyed the order and the men stood with their hands elevated while Parkinson stripped the rings from the woman's fingers. Parkinson then pocketed a wrist watch which he found on the mantel, and, threatening to shoot anyone who attempted to follow him, he left the room and went to the Royal Club.

Ward and Williamson simulated surprise at Parkinson's arrival and conduct. Neither of them disclosed his identity. The woman was an innocent victim of the plot. She directed Ward to notify the police officers of the robbery. Ward advised her not to tell the landlady about the incident. He claimed that he was acquainted with an officer and that he would immediately go to police headquarters and report the robbery. He promptly left the apartment, but failed to report the crime. He first went to Parkinson's room at the hotel in search of his confederate. Finding his roommate asleep, he awakened him, and upon inquiry he was told that Parkinson had not been in his room that night. Ward then left and went to the Royal Club, where he found Parkinson. A taxi driver who took Ward to that club testified that he saw both defendants at that resort. Ward demanded that he be shown the jewelry. Parkinson handed him the rings, one of which he dropped on the floor. That ring was found after considerable search. They quarreled over the disposition of the plunder. After several drinks were consumed, they parted and Ward returned to his apartment. He told Mae Fashbaugh that he had notified the officers of the robbery and that they would soon arrive to make an investigation. He did not tell her who the man was that perpetrated the robbery. He then lay down on the bed and went to sleep.

When Mr. Ward awoke, Mae Fashbaugh told him the officers had not arrived. He pretended to fume over their neglect,

but finally reluctantly consented to accompany her to the police office. When they arrived he first assumed to be angry because they had failed to respond to his request to investigate the crime. They emphatically denied that he had ever reported the robbery. He first told them that he had personally visited their office to report the crime, but upon critical examination he finally admitted that he did not personally visit their office but insisted that he did report the affair over the telephone. After a careful examination of their records the officers positively denied that any report of the robbery had been made to their office by telephone or otherwise. After an investigation the three defendants were arrested and jointly charged with the robbery. On the morning of the trial Parkinson pleaded guilty and told the entire story on the witness stand. He summed up his story by saying that "He (Ward) told me what to do, and I went up and did it."

The jury disagreed with respect to the guilt of Williamson. Ward was found guilty of robbery of the second degree. From the judgment which was accordingly rendered and from the order denying a new trial he has appealed. There is no reasonable doubt of the guilt of the appellant as charged. Ward evidently planned and participated in the robbery of his own mistress by means of trickery.

■ The evidence of the accomplice, Glenn Parkinson, is adequately corroborated by numerous circumstances fulfilling the requirement of section 1111 of the Penal Code. The evidence from witnesses other than Parkinson, shows that he and the appellant were friends and associates for eight years or more. They were both ex-convicts. They met and conferred together in the Bartenders' Union on the early morning before the robbery occurred. They met at the Royal Club after the robbery and discussed the affair. Ward deceived his mistress about reporting the robbery to the police officers. He told her not to inform the landlady regarding the affair. After the robbery Ward went to the room of Parkinson in search of his confederate. When he was informed he had not been in his room that night, he sought and found him in the Royal Club where they quarreled over the disposition of the jewelry. Ward failed to report the robbery until his mistress forced him to go with her to police headquarters for that purpose. He had been intimately acquainted with Parkinson for several years. He was confronted by Parkinson in the bed-

room. Parkinson was not masked and yet Ward failed to disclose his identity. When he was first confronted with Parkinson by the officers, he denied that he was the robber who perpetrated the crime. These and many other circumstances disclosed by the record adequately meet the requirements of section 1111 of the Penal Code.

It is true that evidence corroborating the testimony of an accessory to a crime, which merely creates a *suspicion* of the defendant's guilt, is insufficient to fulfill the requirements of section 1111 of the Penal Code. But it is adequate for that purpose if it tends to connect him with the unlawful commission of the offense, even though, standing alone, it would be entitled to little weight. In considering the weight of such corroborating evidence the entire conduct of the accused in connection with the offense may be considered. (*People* v. *Yeager,* 194 Cal. 452, 473 [229 Pac. 40]; *People* v. *Wiley,* 33 Cal. App. (2d) 424 [91 Pac. (2d) 907]; *People* v. *Nikolich,* 93 Cal. App. 356 [269 Pac. 721]; *People* v. *Tibbitts,* 35 Cal. App. (2d) 669, 672 [96 Pac. (2d) 812].) In the present case, the conduct of the appellant, as above related, furnishes strong evidence of his guilt.

We are of the opinion the challenged statements of the district attorney, which were uttered in the course of his argument to the jury, do not constitute reversible misconduct. Moreover, the appellant failed to object to any of these statements at the trial of the case and the court was not requested to instruct the jury to disregard them. The arguments of counsel are not included in the transcript on appeal. The challenged statements of the district attorney which are quoted in appellant's opening brief appear to be reasonable inferences drawn from the evidence adduced. For instance, the reference to Ward and Parkinson as old friends who had served time together in state prison was warranted from the acknowledged fact that they had been friends and acquaintances for over eight years, and that both of them had served time in state prison. For the purpose of impeachment, the appellant was asked and conceded that he had been previously convicted of second degree robbery. The argument complained of could not have been prejudicial. The reference to the appellant's debauchry and treachery toward his mistress, Mae Fashbaugh, merely expresses the district attorney's construction of the evidence. The evidence clearly shows, that she was living in his

apartment as his mistress. His conspiracy and participation in the robbery of his own mistress certainly merited the condemnation with which the district attorney characterized the transaction. The other assertion that the prosecuting officer had no doubt in his mind "that these two men, Ward and Parkinson, conceived many other crimes", for which they had not been apprehended, merely amounted to an inference reasonably drawn from the evidence of their criminal records and conduct. The appellant himself called Parkinson "an exconvict". The very language employed in the alleged statement shows that the district attorney did not declare as a fact that they had "conceived many other crimes". He merely said that from their conduct in this transaction he "had no doubt" they had conceived other crimes for which they had not been apprehended. The jury must have known that was merely the speculation of the district attorney. We do not commend such extravagant statements in the course of arguments to juries, but under the circumstances of this case, we are satisfied it was neither prejudicial nor reversible error.

 Since the appellant failed to except to those challenged statements, and the court was not asked to instruct the jury to disregard them, he may not complain of prejudicial misconduct on that account for the first time on appeal. The authorities are uniform to the effect that unless it is apparent that the effect of challenged prejudicial statements to a jury cannot be overcome or removed by proper instructions, they may not be reviewed on appeal in the absence of timely objections thereto and proper requests for the court to instruct the jury to disregard them. (*People* v. *Swenson*, 28 Cal. App. (2d) 636, 641 [83 Pac. (2d) 70]; *People* v. *Foppiano*, 23 Cal. App. (2d) 87, 95 [72 Pac. (2d) 239]; 24 Cal. Jur. 746, sec. 29; 8 Cal. Jur. 621, sec. 602.) It has been said that a defendant may not silently sit and listen without protest to improper argument against him, speculating on the hope of receiving a favorable verdict, and then, for the first time, on appeal, assign the statements as reversible error.

A motion for diminution of the record to incorporate the argument of the district attorney in the transcript in this case was denied, for the reasons that it did not appear the appellant had objected to the challenged statements at the trial and that he failed to ask the court to instruct the jury to disregard them. Not only were the statements mere reasonable de-

ductions to be drawn from the evidence, but, if they be deemed to be erroneous, it does not appear their effect upon the jury would not have been removed by proper instructions to disregard them. They do not constitute reversible error.

■ We find no error in the rulings of the court upon the introduction of evidence during the trial of the case. The appellant has failed to direct our attention to any such rulings which we deem to have merit. Under that heading he asserts there is an absence of evidence that the appellant personally performed any act constituting an exercise of ''force'' or which had the effect of creating ''fear''. The evidence clearly shows that the jewelry was forcibly taken from the owner by Parkinson by means of fear. It was not necessary that the appellant himself should have personally resorted to force or that he should have acted in a manner to create fear on the part of the owner of the property, since he planned and helped to execute the crime of robbery. The force and fear exercised by Parkinson, under the circumstances of this case, is imputed to the appellant.

■ The court did not err in rejecting the instruction offered by the appellant to the effect that ''circumstances of suspicion'' are insufficient upon which to base a verdict of conviction. This proffered instruction was directed toward the alleged lack of evidence corroborating the testimony of the accomplice to the crime. 'It is a well-known principle that an accused person may not be convicted upon mere surmise or suspicion. It is also true that evidence corroborating the testimony of an accomplice, under section 1111 of the Penal Code must amount to more than mere suspicion. The rejected charge was fully covered by other instructions which were given to the jury. For instance, the jury was specifically told the testimony of an accomplice should be ''viewed with distrust''; that corroboration of an accomplice ''is not sufficient if it merely shows the commission of the offense or the circumstances thereof''; that a defendant is presumed to be innocent until the contrary is proved ''beyond a reasonable doubt''; that to establish the guilt of a person by circumstantial evidence, it must be consistent with his guilt and ''inconsistent with any reasonable theory of his innocence, and must show his guilt beyond a reasonable doubt''; that ''this case is to be tried only on the evidence which is before you, *and not on suspicions*'', and that ''if you entertain a reason-

able doubt as to the guilt of the defendant, *you should vote for acquittal"*. It was therefore not error to reject the instruction offered by the appellant.

■ The appellant offered an instruction which was refused, to the effect that "untruthful statements . . . as to the identity of the person" who committed the robbery, are insufficient upon which to sustain a conviction. That charge is an incomplete statement of the law and it is misleading. It was properly rejected. The appellant knew Parkinson and must have recognized him as the perpetrator of the crime. The deliberate concealing of the identity of that man was a material fact tending to show the guilt of the appellant. If the appellant wilfully swore falsely regarding the identity of Parkinson, the jury would be required to distrust him in all of his testimony. (Sec. 2061, subd. 3, Code Civ. Proc.; 8 Cal. Jur. 352, sec. 392.)

■ Finally, the appellant complains of the refusal to give an instruction offered by him that, "The law does not permit you to indulge in *speculation or conjecture,* but permits the drawing of such inferences only, as may be reasonable." This instruction was sufficiently covered in the charge which was given to the jury, as follows: "The law will not permit jurors to be governed by mere sentiment, *conjecture,* sympathy, passion or prejudice. *A verdict founded upon . . . conjectures would be a false verdict."* It was therefore not error to reject this proffered instruction.

We are satisfied the appellant received a fair and an impartial trial, and that there was no miscarriage of justice in his conviction of robbery of the second degree.

The judgment and the order are affirmed.

Tuttle, J., and Pullen, P. J., concurred.