[Crim. No. 2457.   First Dist., Div. One.   June 2, 1947.]

THE PEOPLE, Respondent, v. WILLIAM PARKER,
Appellant.

Geo. D. Pollock for Appellant.

Fred N. Howser, Attorney General, David K. Lener and Clarence A. Linn, Deputy Attorneys General, for Respondent.

PETERS, P. J.—Defendant William Parker was found guilty by a jury of second degree robbery.   He appeals from

the judgment of conviction and from the order denying his motion for a new trial. His principal contention is that the testimony of the principal witness against him, one J. C. Martin, who was admittedly the chief actor in the robbery, was an accomplice, and it is contended that Martin's testimony was not sufficiently corroborated as required by section 1111 of the Penal Code. Martin, prior to appellant's trial, had pleaded guilty to the offense in question.

The robbery was committed in the early afternoon of June 13, 1946, near Salinas, California. The victim was Floyd Archer, aged 22. There is no dispute that Martin knocked Archer down and removed over $500 and a wrist watch from his person. The question is whether Martin's story that Parker was a participant and split the proceeds with him is sufficiently corroborated. It must be conceded that the corroboration is not as strong as might be desired, but, for reasons hereafter stated, we think it legally sufficient.

Archer testified that prior to June 13, 1946, he had not known either Martin or Parker; that he worked for the Permanente Company and that June 13th was his day off; that on the morning of that day about 10:30 a. m. he entered a bar in Salinas to cash a check; that he ordered a drink and cashed a check for $141.86, he then having, in addition, over $360 in bills in his wallet; that Martin was sitting next to him, saw him cash the check, and started a conversation with him by asking him if he wanted another drink; that the two had a drink together; that at this time appellant Parker was "about two guys" up the bar away from Archer and Martin; that about ten minutes later Martin introduced Parker to the witness; that they sat down and had several more drinks, most of which Martin bought; that they remained drinking for some time and then appellant suggested that they get a cab and pick up some girls; that the three left the bar and got into a taxicab; that they picked up appellant's girl friend but were unsuccessful in finding any other girls; that Martin bought a bottle of wine and they all drank from the bottle in the cab; that they then drove back to town, left appellant's girl friend at a restaurant, and then went back to the bar from which they had started and began drinking again; that then the witness told Martin and Parker that he was going out to the Permanente plant to pick up some tools; that he had

his "pickup" truck parked nearby; that Martin and Parker decided to go with him; that at this time he, the witness, was "pretty drunk," and they all agreed that appellant Parker should drive; that they proceeded toward the Permanente plant all partaking of drinks from the bottle; that Parker drove past the Permanente plant without stopping for about a mile and a half and then stopped the car; that Martin got out of the truck and so did the witness; that up to this point there had been no argument of any kind; that, without warning, Martin then hit Archer in the eye and knocked him into a ditch; that Archer was briefly unconscious from the blow and from hitting his face on a big rock in the ditch; that Martin then removed the witness' wrist watch and wallet; that appellant Parker did not join Martin in this attack, but in fact told Martin to "leave me [Archer] alone"; that Martin then drove a short distance away with the truck and appellant Parker came over and tried to wipe the blood from the witness' face; that Parker then told the witness "to take it easy, as soon as he got to town he would call the police"; that Martin then returned with the truck, told Parker to get in and Martin and Parker then drove away leaving the witness in the road; that Archer then walked back to the Permanente plant and reported the robbery to the police.

J. C. Martin was next called as a witness for the prosecution. He had already pleaded guilty to the offense in question. He testified that he and appellant Parker had been acquainted for about a month; that on the morning in question he met Parker at a restaurant and the two then proceeded to the bar; that about twenty minutes after they arrived Archer came in and cashed a check; that Parker was then about five feet from Archer; that he started to converse with Archer and then Parker came over; that he and Archer then bought several drinks and then Parker suggested getting some girls. His testimony as to the ride in the taxicab and the return to the bar and the further drinking there is substantially similar to that of Archer. He then testified that Parker drove the truck and finally stopped at his, Martin's, suggestion; that he then hit Archer and robbed him; that he and Parker had had no previous conversation about "rolling" Archer; that when he, Martin, hit Archer, the appellant Parker was by the side of the truck drinking from the bottle and about eight feet from the scene of the attack; that Parker made some mention about Archer "having enough," but made no effort to prevent Mar-

tin from robbing Archer; that Martin then got in the truck, drove it a short distance, turned around, came back to the scene of the attack, and told Parker to get in; that Parker said "Let's don't go, we can do this easier than this"; that Parker then got into the truck and insisted on driving. Archer had testified that Martin was driving at this time. Martin testified that Parker drove the truck back to Salinas and they then abandoned the truck and procured a taxicab and drove to the home of some friends of Martin's; that Martin told the cab driver to return in an hour and a half or two hours and that he and Parker went into the house; that Parker then said: "How much did we get?"; that they then divided the money equally; that the cab then returned and they rode further towards town and Parker got out and left. He also testified that he told Parker that he, Martin, was going to leave town and Parker replied that he was going to do the same thing. Martin also testified that he and appellant had never talked about robbing people before this day; that Archer cashed the check within Parker's sight and that when the check was cashed Parker looked at him and nodded his head.

The police chief of Salinas identified a statement made by Parker on the day of his arrest. That statement conforms substantially with the testimony of appellant hereafter set forth. It should be here noted that Martin fled from town and was not captured for some time. Appellant remained in Salinas and was arrested the day following the robbery. At that time he had but $7.00 in his possession. The police chief testified that he saw the three men come out of the bar on the day in question and get into a taxicab; that all of them apparently had been drinking; that he followed the cab during the time Martin went into the store and emerged with a bottle, and while appellant picked up his girl friend; that he then lost the cab.

This constitutes the case for the prosecution. Appellant was then called as a witness in his own behalf. He admitted a prior 1942 conviction of robbery. His testimony as to meeting Martin and proceeding to the bar, and meeting Archer there is substantially similar to that of Martin and Archer, except that he denied seeing Archer cash the check. The rest of his testimony about the taxicab ride, the return to the bar and finally leaving in Archer's truck is substantially similar to that of the other witnesses. He testified that when he stopped the truck he did so upon Martin's direction; that he

got out and took a drink from the bottle; that Martin and Archer walked around back of the truck and that Martin hit Archer; that after Martin had robbed Archer, Martin drove away in the truck and he, Parker, refused to accompany him; that he, Parker, assisted Archer by picking him up and wiping the blood off his face; that Martin returned in the truck and was going to hit Archer again but he, Parker, prevented him from doing that. Martin denied that he attempted to hit Archer again, and Archer had no recollection of this threatened second attack. Parker testified that when Martin returned with the truck that he, Parker, asked Archer's permission to ride back with Martin in the truck, and Archer granted him that permission. This was denied by Archer. Parker testified that he told Archer that when he, Parker, got to town he would inform the police of the robbery; that then he left with Martin and Martin drove the truck back to Salinas; that on the way back Martin was mad at him because he, Parker, had refused to assist in the robbery; that they abandoned the truck in Chinatown and took a cab to the home of Martin's friends; that he, Parker, did not get out of the cab but sat in the cab for fifteen minutes while Martin was inside; that when Martin came out he told Parker that his brother had a gun, and also told Parker that if he, Parker, ever mentioned the robbery "it would not be good for me"; that he, Parker, told Martin that he would not bother him. Martin denied making any threats to Parker. Parker testified that he rode in the cab a short distance and then got out; that he started towards the police station to report the robbery and then changed his mind because he still had the wine bottle and, of course, had been drinking; that he was arrested the next afternoon and told the officers all that he knew about the affair.

This is a fair summary of the evidence. Appellant urges that without the testimony of Martin there is nothing in the record to indicate that appellant in any way participated in or shared in the proceeds of the robbery. It is argued that the prosecution failed to corroborate Martin's testimony sufficiently to satisfy the requirements of section 1111 of the Penal Code. That section provides: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. . . ."

There have been many cases interpreting that code section. ▮ It is now too well settled to require extended discussion that all of the elements of the offense need not be shown by corroborating testimony. The testimony of the accomplice is alone sufficient to establish the commission of the crime charged, and all that the law requires in addition to the testimony of the accomplice is some evidence which tends to connect the defendant with the commission of the offense or from which such connection is reasonably inferable.

The rule is stated as follows in *People v. Briley,* 9 Cal.App. 2d 84, 86 [48 P.2d 734]: "The corroboration of an accomplice required by section 1111 need not be such as tends to establish the commission of the offense or to corroborate the precise facts testified to by the accomplice. [Citing cases.] All that the law requires is that, in additon to the testimony of the accomplice, there be some evidence which, though slight, tends to connect the defendant with the commission of the offense. The testimony of the accomplice standing alone is sufficient to establish the commission of the crime charged [citing cases], and the extrajudicial declarations of the defendant are sufficient corroboration to sustain a conviction where the effect of such declarations is to tend to connect him with the commission of the crime charged. [Citing cases.]"

In *People v. King,* 40 Cal.App.2d 137, 141 [104 P.2d 521], the following is said: "The entire conduct of the accused may be looked to for corroborative circumstances and if therefrom his connection with the commission of the crime may be fairly inferred the corroboration is legally sufficient. [Citing cases.]" (See, also, *People v. Yeager,* 194 Cal. 452 [229 P. 40].)

▮ While it must be admitted that the corroborating testimony is not very strong it cannot be held, as a matter of law, that it does not tend to connect appellant with the commission of the charged offense. Appellant admittedly was friendly with Martin before the robbery. Admittedly, he accompanied Martin to the bar where they struck up an acquaintance with Archer. It is a reasonable inference that appellant saw the check being cashed by Archer. Admittedly appellant engaged in a drinking bout with the victim, and admittedly the victim got pretty drunk. Archer corroborates the accomplice's testimony that appellant, without explanation, drove a mile and a half beyond the Permanente plant. Neither at the trial nor at any other time, so far as the record discloses, did appellant

offer a reasonable explanation of why he did not stop at the Permanente plant when that was their ostensible destination. Another suspicious and corroborating circumstance is that appellant stood by and made no attempt to assist Archer or to prevent the robbery. Appellant admits that the reason that he drove the truck was that he was the least intoxicated of the three. It is reasonable to infer that appellant and Archer together could have prevented the robbery. His mild remonstrance and assisting Archer after the attack may well have been part of a deliberate plan to make Archer believe that appellant was innocent. A most important and significant corroborating circumstance is that, immediately after the attack, appellant joined Martin in his flight from the scene of the attack. (*People* v. *Rice*, 29 Cal.App.2d 614 [85 P.2d 215].) An innocent man does not normally voluntarily join a robber immediately after the robbery and drive off in the victim's truck leaving the dazed victim in the middle of the road. The failure of appellant to inform the Salinas police of Martin's acts after having assured Archer that he would do so is another corroborating circumstance. (*People* v. *Ward*, 40 Cal.App.2d 143 [104 P.2d 537].) While appellant denied that he went into the house with Martin, and testified that he sat in the cab for fifteen minutes awaiting the return of Martin, this testimony does not ring true. Here is a man who claims to be innocent. He has just witnessed a brutal assault and robbery. He claims to have been afraid of Martin —yet he expected the jury to believe that, in spite of such fear, he sat alone in the cab for fifteen minutes and made no effort to escape. While some of these corroborating circumstances can be reasonably reconciled with innocence, that factor is not determinative. "If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury." (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) (See, also, *People* v. *Kessler*, 62 Cal.App.2d 817 [145 P.2d 656].) It is our view that the above corroborating circumstances do more than raise a mere suspicion of appellant's guilt—even though slight, they do tend to connect the appellant with the crime involved. That is all the law requires.

Appellant charges error in the admission of evidence in two respects, and, while fairly admitting that the alleged errors normally might be thought not very important, he con-

tends that in view of the slight corroboration, the errors must be deemed to have been prejudicial. The first alleged error occurred while the police chief of Salinas was on the stand. After the chief had testified that he saw the three men come out of the bar and get into a taxicab the following occurred (R.T. 46):

"THE COURT: You were following them? A. Yes, I was following them. Q. You were suspicious of something? A. I was. MR. POLLOCK: Your Honor, that is—— THE COURT: The question and answer will remain in. I want to know why this officer followed them. MR. POLLOCK: If my client is the one, that is admissible. THE COURT: It does not make any difference who it was, I have a right to know why he followed these men. Go ahead."

The other instance of claimed error in the admission of evidence occurred during appellant's cross-examination (R.T. 68): "THE COURT: . . . Q. Didn't you talk to this fellow Martin about how easy it was to get money off drunks? A. No, sir, I never robbed but one time, and you know what it was, that is the only time I have ever did that."

As to the first excerpt above quoted it is urged that the court allowed the "suspicions" of the police chief to get before the jury. It will be noted that no objection was made to this line of questioning. It would appear that appellant's counsel started to object and then conceded that the reasons why the chief followed the three men were admissible as long as his client was one of the men being followed.

In connection with the second excerpt above quoted, appellant contends that by the question the trial judge got into the record his "suspicion" of a previous conversation between Martin and Parker about robbing drunks. It is hard to follow this reasoning. If a prior conversation had taken place, that fact was most relevant. The only way to find out whether such a conversation in fact occurred was to ask. Appellant denied that such a conversation took place and gratuitiously added that he had only robbed once. No objection was made to this question. Normally, under such circumstances, the point cannot be raised for the first time on appeal. (*People* v. *Fleming,* 218 Cal. 300 [23 P.2d 28]; *People* v. *Harvey,* 22 Cal. App.2d 532 [71 P.2d 841].)

The judgment and order appealed from are affirmed.

Ward, J., and Bray, J., concurred.