THE PEOPLE OF THE TERRITORY OF GUAM
Plaintiff-Appelle

v.

JOHNNY C. DELA ROSA
Defendant-Appellant

Criminal Appeal No. 78-00036A
District Court of Guam, Appellate Division
October 12, 1979

- - - - -

OPINION

[Reversed and Remanded, CA9 1980, ____ F.2d ____.]
[New Trial Scheduled; Guilty Plea entered by Defendant - Sept. 1982]

DUENAS, District Judge; STEPHENS, District Judge; HEFNER, Designated Judge

PER CURIAM:
    The Appellant, Johnny C. Dela Rosa, was convicted by a jury on two counts of murder, one count of attempted murder and three counts of robbery.  On August 28, 1978, the Superior Court of Guam sentenced Dela Rosa to eighty years imprisonment plus two life terms to run consecutively.  We find that the appellant's right to a fair trial was protected and that none of the arguments presented on appeal warrant reversal. Accordingly, we affirm.
    On the evening of March 29, 1978, just before dusk, the lifeless bodies of three Japanese women were found on Guam in the Two Lovers Point area.  Two of the women, Akemi Yokozawa and Satomi Tanaka, were dead, and Makiko Yamada, the other, was seriously hurt.  The women were kindergarten teachers in Japan, spending a holiday on Guam.

143

Testimony of several witnesses established that the women were shopping and sightseeing during the morning of March 29, 1978 along the San Vitores Road area. They were seen at the Okura Hotel tennis courts where they stopped to buy soft drinks. A tennis professional at the hotel testified that the women were carrying only large bills. He also stated that a man arrived in a gold colored automobile and that Miss Yamada asked the man how far it was to Two Lovers Point.

After being directed by a motorcycle policeman regarding the route to Two Lovers Point, the women continued walking on a road leading to Marine Drive. While on this road, it seems that the person Miss Yamada had spoken to at the tennis courts pulled up in his car and offered the women a ride. On the way to Two Lovers Point, Miss Yamada conversed with the driver, while her two friends sat in the back seat. Close to Two Lovers Point, the car turned down a jungle road and stopped. The women got out of the car and the man shot Akemi Yokozawa. Miss Yamada was then shot and discovered in critical condition early that night, near the bodies of her two companions.

The prosecutor's case against Dela Rosa was based mainly on the testimony of Anthony Gumataotao, who stated that Dela Rosa had said he committed the crime and had given him (Gumataotao) some of the victims' money and possessions. He also testified that he and Dela Rosa destroyed some of the evidence of the crime and that they threw a gun and some gold necklaces into the jungle. The appellant argues that the Superior Court should have given his requested instruction on informant, informant-addict, accomplice, and immunity because Gumataotao was the original suspect in the case.

It is true that all of the fruits of the crime were connected to Gumataotao before he implicated Dela Rosa. Certain items belonging to the victims were found at Gumataotao's house and he led the police to other items. However, there was no evidence presented to support the jury instructions which the defendant requested at trial.

First, there was nothing in the record to show that Gumataotao was ever paid by the Government or that he had been promised immunity. In fact the evidence was to the contrary where Gumataotao stated that no promises were made to him and that he had no intention of collecting a reward in the case. (TR Volume IV, pages 133 and 175). Also, as the Government has pointed out, there was no evidence to suggest that Gumataotao aided or abetted the commission of the crime. See People v. Chapman, 209 P.2d 121, 131 (Calif. 1949); United States v. Miller, 499 F.2d 736, 740 (10th Cir., 1974).

Admittedly, the credibility of Anthony Gumataotao's testimony was subject to question (as was brought out by

defendant's counsel on cross examination). However, it was not plain error for the court to have refused an instruction which as not supported by the evidence. If defendant's counsel had wished to instruct the jury that the testimony of a possible suspect should be viewed with caution, he should have made such a request and fashioned his instruction along such lines, supported by citation. Although appellant argues that On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 is directly on point; it is not nor are the other cases which he cites.

Next is is argued that a more specific instruction should have been given on eyewitness identification. While we agree that whether Miss Yamada could identify the defendant as her assailant was an important issue, the Ninth Circuit has held that whether or not to give the more general instruction is within the sound discretion of the trial judge. United States v. Mesterson, 529 F.2d 30 (1976). We find that the use of the more general instruction found in Devitt and Blackmar's Federal Jury Instructions, Instruction 15.18, adequately stated the law and was not an abuse of discretion.

Appellant next argues that the admission of certain photographs of the murder victims were inflammatory and contained no probative value. As the Government points out, the victims in the instant case were fully clothed and were not mutilated or dismembered. Although the record is not entirely clear on this point, it seems that the trial judge did study the photographs as they were being held by the witness. We cannot say that as a matter of law the trial judge abused his discretion in admitting the photographs in question because it seems that they were helpful in presenting the testimony of the medical expert. (TR Volume I, page 69). See e.g. State v. Martinez, 439 P.2d 691, 696 (Idaho, 1968).

The remaining issues presented on appeal can be dealt with summarily. The fact that the defendant had expressed a fondness for the murder weapon several weeks before the murders and had tried to acquire it was relevant and the probative value outweighed any prejudice which appellant says resulted. See e.g. U.S. v. Leonard, 445 F.2d 234 (D.C. Cir., 1971) where it was held that evidence of one crime leading to the commission of another crime can be admitted. Also, while we don't necessarily approve of the prosecutor's personal comments against defendant's counsel during closing argument, it was up to defense counsel to ask that the jury disregard these comments. Also, the record does not support appellant's contention that there should have been a change of venue. Appellant admits that the jury stated that it could put aside any publicity and render a fair and just verdict. Finally, whether or not to admit the testimony of Frank Ishizaki

regarding ballistics was within the sound discretion of the trial judge and we find no error.

Affirmed.